UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JEFFREY M. SERNA, | § § § § § § | CIVIL ACTION NO. |
| Plaintiff, | § § | _____ |
| VS. | § § | |
| CITY OF GAINESVILLE, TEXAS, | § § | |
| Defendant. | § § § § § § § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Jeffrey M. Serna, hereinafter called "Plaintiff" or "Serna," by and through the undersigned attorney, complaining of and about the City of Gainesville (the "City" or "Defendant"), and for causes of action shows unto the Court the following:

### PRELIMINARY STATEMENT

1.      The Plaintiff, Jeffrey M. Serna, brings this action against the Defendant, for violations of Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e).

2.      At the time of the discrimination and retaliation, Serna was employed with the City, as a police officer, and held the rank of Sergeant. Despite Serna's long-term service with the City, he was subjected to discrimination because of his race (Hispanic), subjected to continuous harassment, and subjected to a hostile environment.  Defendant later subjected Serna

to retaliation after having knowledge that he participated in protected activity by filing a complaint on the basis of several forms discrimination against.  Serna was later constructively discharged due to the intolerable working conditions.

## JURISDICTION

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that it is a civil action arising under Title VII.  This action further arises under the U.S. Constitution, laws, or treaties of the United States.

## VENUE

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), as this is the judicial district in which a substantial part of the events or omissions giving rise to the asserted claims occurred.  Further, the exercise of personal jurisdiction comports with Due Process under the United States Constitution.

## CONDITIONS PRECEDENT

5. On March 29, 2019, Serna filed an internal complaint in opposition to the City's unlawful employment practices involving discrimination.  The City's human resources department confirmed receipt of Serna's on the same date.

6. On December 10, 2019, Mr. Serna filed a Charge with the U.S. Equal Employment Opportunity Commission (the "Commission") on the basis of race, national origin, harassment, retaliation and hostile work environment.  The Commission issued Mr. Serna a right to sue letter ("RTS") affording him up to 90 days to file suit in U.S. District Court against the

Respondent. The RTS letter was dated March 6, 2021, but Serna did not receive the letter until sometime after that date.

7. Mr. Serna has complied with all conditions precedent to raising the claim(s) set forth in this matter.

8. Serna adequately exhausted his administrative remedies prior to filing this lawsuit.

9. Serna has mitigated his damages to at least the extent required by law.

### PARTIES & SERVICE

10. **Plaintiff Jeffrey M. Serna** is an individual who resides in Denton County, Texas. Plaintiff is a citizen of Texas.  Plaintiff may be contacted by his undersigned attorney.  Serna is an employee, as defined by Title VII.

11. **Defendant City of Gainesville, Texas** is a municipal corporation and political subdivision of the State of Texas.  In accordance with the City's Charter, the City may be served by serving its **Mayor Tommy Moore** at **200 South Rusk, Gainesville, Texas 76240**.

### FACTS

12. The City hired Serna on January 12, 2009 to work in the Police Department. Serna started his career as a Police Trainee.  Serna continued employment with the City until February 5, 2020.

13. During the course and scope of Serna's employment, he was subjected to a number of acts that he considered to be severe, pervasive and ongoing.  Serna felt that several of

his colleagues created tension in the workplace by attacking him through false rumors, using racially derogatory terms in front of him and directed towards him.

14. By way of background facts, Serna was called "a slave driver," "the death of Corporals," accused of doing illegal things in the course and scope of his work. Serna witnessed several officers in the Gainesville Police Department discussing doing something to African Americans. During this discussion, SGT Garner referred to the African American citizens as "niggers." SGT Garner attempted to defend his use of the derogatory term, "nigger," by stating that he is from Louisiana and the term was commonly used, accepted and not considered to be offensive. Clearly, the opposite is true, as this term is inappropriate in the workplace.

15. In March 2012, Serna was promoted to the rank of Patrol Corporal. During this time, he was reassigned to SGT Frith's shift. In 2014, Serna was promoted to the rank of Patrol Sergeant and SGT Frifth was promoted to the rank of Captain ("CPT"). Shortly thereafter, SGT Balthrop asked Serna to secure his City check from his departmental mailbox and bring to the Lowe's parking lot. Serna complied with SGT Balthrop's request. After receipt of the City check, SGT Balthrop told Serna "I hate you."

16. While attending Patrol Staff meetings, SGT Balthrop and Reynolds would constantly disagree with ideas or opinions that Serna would present. If Serna mispronounced a word, they would in turn belittle Serna. This caused other employees to laugh at Serna. They continuously mocked Serna and put him down in front of other employees.

17. Serna was subjected to so much ridicule and belittlement that he would request permission to skip Patrol Staff meetings in order to avoid the unwarranted stress and frustration. Serna had to resort to sending emails to CPT Frifth his issues or opinions for future staff

meetings. Serna used this alternative method of communication in order to avoid having to be subjected to their vulgar commentary.

18. In January 2017, Serna was investigated for alleged sexual harassment of another police officer. SGT Reynolds provided false information that led to this investigation. The investigation determined that no violation occurred—Serna was cleared of any wrongdoing.

19. In August 2018, Serna was issued a written reprimand related to a vehicle pursuit. SGT Reynolds made it known to other employees that he was not happy with the discipline that was rendered to Serna. Reynolds believed that Serna should have received more severe penalty.

20. In 2018, Serna was travelling with SGT Jones and SGT Garner in Lindsay, Texas for lunch. They passed a stopped vehicle. An individual outside of the vehicle appeared to be of Middle Eastern or Hispanic descent. SGT Garner stated that he "hated those f*cking people." It was then realized that one of their radios transmitted Garner's comment. As a result, SGT Garner was stressed because he thought someone heard the comment and he would be disciplined.

21. In October 2018, Serna overheard SGT Reynolds refer to one of his subordinate officers as "monkeys." Serna believed Reynolds comment to be offensive, degrading, and racist.

22. In December 2018, SGT Reynolds reported another incident against Serna. Reynolds requested that the City take disciplinary action against Serna. Serna believed that Reynolds was actively and overtly working to sabotage Serna's career.

23. On January 14, 2019, Officer Patterson informed Serna that SGT Reynolds did not like Serna and wanted him gone from the Police Department.

24. When the City proposed a survey of the Police Department, Serna was in support of the idea.  SGT Reynolds started false rumors that Serna was upset because a survey was being conducted.  Serna believed this to be another attempt by Reynolds to negatively impact Serna's employment with the City.

25. Serna reasonably believed that he has been singled out because he is Hispanic.

## COUNT ONE

**Race and National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**(42 U.S.C. §§ 2000e et al.)  Against the City of Gainesville**

26. Serna repeats and re-alleges paragraphs 1 through 25 hereof, as if fully set forth herein.

27. Serna is a Hispanic male who worked in the City's Police Department.  Serna was qualified for this position as a police officer and rank of SGT.  Serna was qualified for the position of Patrol Captain.  On April 9, 2019, Serna informed Chief Phillips of his interest in the position.  When Serna asked Chief Phillips if he had a change for selection, he responded: "How could I promote you Jeff with all this going on?"

28. Serna submitted his letter of intent for the position on April 22, 2019.

29. Serna was not selected for the position of Patrol Captain.  The position was filled by a non-Hispanic individual and someone who was treated more favorably than Serna.

30. Serna suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, attorney fees, and the costs of bringing this action.

## COUNT TWO

**Retaliation in Violation of Title VII of the Civil Rights Act of 1964
(42 U.S.C. §§ 2000e et al.) Against the City of Gainesville**

31. Serna repeats and re-alleges paragraphs 1 through 30 hereof, as if fully set forth herein.

32. On March 29, 2019, Serna engaged in protected activity by initiating an internal complaint to the City's HR department in opposition to unlawful employment practices. Serna asserted his claims of a hostile work environment, race discrimination, harassment, and retaliation in his internal complaint to the City. Shortly thereafter, Serna was subjected to continuous acts of retaliation.

33. On April 9, 2019, an unknown officer provided the City Manager with a forged Corporal exam and accused Serna of cheating. The City Manager refused to divulge the name of the officer to human resources or Chief Phillips, which prevented the City from conducting an investigation that was required by policy.

34. Serna applied for and was not selected for the Patrol Captain position.

35. On April 25, 2019, Serna was subjected to an interview related to administrative investigation No. 19-002 relating to an incident that was discussed and resolved in December 2018. Captain Orr conducted the interview and it was later discovered that CPT Orr was the complainant.

36. On April 27, 2019, HR Director Gore informed Serna that she did not agree with the City Manager's decision refusing to divulge the name of the individual who submitted the forged Corporal exam. Gore confirmed that City policy was not followed.

37. On May 23, 2019, someone wrote "Ha Ha MF" on Serna's locker in the locker room. On May 28, 2019, Serna requested a follow up investigation.

38. On June 6, 2019, Serna met with Chief Phillips. Phillips informed Serna that he presented Serna's follow up investigation request to CPT Orr and CPT Garner. Orr and Garner informed Phillips that SGT Reynolds was doing some "soul searching." Phillips informed Serna that Orr and Garner would ensure that no further retaliation and/or complaints against Serna would be taken if Serna would agree to drop his request for a follow up investigation. Phillips further stated that if Serna agreed to drop his follow up investigation request, then this entire situation would be over.

39. When Serna informed Chief Phillips that there was several witnesses to SGT Reynolds conduct towards Serna, Phillips responded that he would say that the witnesses were biased, had negative ill will or malice towards SGT Reynolds.

40. Serna declined Phillips offer to withdraw his follow up investigation request. Serna wanted to do what was best for the Police Department, police officers as a whole and the citizens of Gainesville. Serna opted to move forward with follow up investigation request, despite the risk of further retaliation against him.

41. On June 12, 2019, Chief Phillips informed Serna that he was not going to further investigate. At 1900 hrs on the same date, Serna's wife, Rhonda, received a text message from Chief Phillip's wife, Elizabeth. Elizabeth stated that Chief Phillips informed her that Serna was upset with Chief Phillips.

42. On June 25, 2019, Serna was removed from the upcoming Patrol Corporal promotional board. Serna served on this board for the last five years prior to his removal. SGT Reynolds was permitted to remain on the board.

43. On July 9, 2019, Chief Phillips received information that Serna, Officer LaSalle and Officer Foster applied for employment with the City of Little Elm Police Department. Serna confirmed that the information was accurate.

44. On or about July 22nd or 23rd, 2019, LaSalle, Foster and Serna met with the background check investigator at the City of Little Elm. SGT Compton of Little Elm informed them that CPT Garner called him to inquire about who applied for positions in Little Elm. SGT Compton refused to divulge this information to SGT Garner.

45. The City sought volunteers to sell back their comp time. Serna did not want to participate in this offer. Instead, the City paid Serna for his comp time over his decision not to voluntarily relinquish those hours. There were other police officers with comp time who chose not to volunteer to sell back their comp time. The City permitted those officers to keep their comp time, unlike Serna. Serna was the only treated differently.

46. On October 4, 2019, someone threw Serna's gym bag across the locker room floor. Serna notified Chief Phillips and CPT Garner.

47. On October 12, 2019, Serna opened his locker and noticed a single .40 caliber hollow point bullet, sitting upright, towards the front in the middle of the top shelf.

48. On October 13, 2019, Serna's Tough hanger was stolen. Serna notified Chief Phillips and CPT Garner about this incident.

49. Serna suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, attorney fees, and the costs of bringing this action.

50. Defendant intentionally violated Serna's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT THREE
**Harassment and Hostile Work Environment Against the City of Gainesville and ARBH**

51. Serna repeats and re-alleges paragraphs 1 through 50 hereof, as if fully set forth herein.

52. Serna was a member of at least the protected class of race. Serna was subjected to continuous harassment through the acts of Reynolds and a few others.

53. Through its agents, the City changed the terms and conditions of Mr. Serna's employment when it failed to consider him for promotion to Captain, removed him from the Corporal Promotional Board, subjected him to repeated and unnecessary investigations

54. The City further made the work environment hostile by knowingly permitting Reynolds to sabotage Serna's work environment, his professional reputation and allowing Reynolds to facilitate retaliatory acts against Serna.

55. The City was aware of Reynolds' and the other employees conduct towards Serna and failed to take remedial action.

56. Even if the City did not intentionally discriminate against Serna, they adopted facially neutral employment practices that created such disparities against Mr. Serna as a

Hispanic male that the City's employment practices were the functional equivalent to intentional discrimination.

57. Mr. Serna was the only employee in his position that was Hispanic.

58. In furtherance of Reynolds' conduct, the City has permitted his poor display of behavior to be filed in Serna personnel record, which will follow up.  Reynolds conduct is severe and pervasive enough to where it altered Serna's conditions of employment and created an abusive working environment.

59. As a result of these acts, the work environment was difficult and intolerable for Mr. Serna.  Mr. Serna was employed with the City for 11 years, but the City treated him differently when he opposed the unlawful change in the terms and conditions of his employment.

60. A combination of the previously aforementioned claims constitute a hostile work environment against Mr. Serna's employer.

## COUNT FOUR
**Constructive Discharge in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et al.), as amended**

61. Serna repeats and re-alleges paragraphs 1 through 60 hereof, as if fully set forth herein.

62. Serna's work environment became so intolerable that a reasonable person in his position would have felt compelled to involuntarily resign.  The terms and conditions of his employment changed tremendously to the point where Serna's work environment was made difficult and extremely hostile by the acts of Reynolds, Garner, and several others.

63. The City failed to exercise reasonable care to prevent or correct its employees conduct towards Serna.

64. The City is strictly liable for the acts of its employees.

## COUNT FIVE
## Cat's Paw Liability

65. Serna repeats and re-alleges paragraphs 1 through 64 hereof, as if fully set forth herein.

66. On information and belief, Reynolds engaged in a variety of acts to facilitate the removal of Mr. Serna as Police Officer in the City. Chief Phillips confirmed Reynolds involvement in these acts when he attempted to persuade Serna to drop his request for a follow up investigation in exchange for Reynolds leaving Serna alone.

67. Through it all, Reynolds was in a position to influence Chief Philips about his dealings with Mr. Serna.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for his past and future loss of wages, seniority and benefits, plus interest as a result of the violations;

C. Award Plaintiff front pay (including benefits);

D. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action.  Such fees may be awarded under Title VII, the Back Pay Act, 42 USC § 1988--- or if under none of those----the Equal Access to Justice Act.;

E. Award to Plaintiff compensatory damages;

F. Award to Plaintiff punitive damages;

G. Equitable relief, such as a declaration that Defendant violated Title VII;

H.   An injunction prohibiting the Defendant from further violating the law against Plaintiff;

I.  An order requiring the Defendant to regularly report to the Court on future efforts to reduce the likelihood of others suffering such violations; and

J. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: <u>5 JUNE 2021</u>

Arlington, Texas

Respectfully submitted,

By:     /s/ Lantis G. Roberts
Lantis G. Roberts
Texas Bar No. 24057463
E-Mail:  Lantis@kreativelaw.com
**THE LAW OFFICE OF LANTIS G. ROBERTS, PLLC**
1166 West Pioneer Parkway
Arlington, TX 76013
Tel. (817) 768-1819
Fax. (817) 704-4529
**Attorney for Jeffrey M. Serna**